RECEIVED
IN ALEXANDRIA, LA
JUL - 8 2005
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| BRENDA BOWIE o/b/o DE'ERICA BOWIE,<br>Appellant | CIVIL ACTION<br>SECTION "P"<br>NO. CV04-1602-A |
| VERSUS | |
| JOANNE B. BARNHART, COMMISSIONER OF SOCIAL SECURITY,<br>Appellee | JUDGE DEE D. DRELL<br>MAGISTRATE JUDGE JAMES D. KIRK |

REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Brenda Bowie ("Bowie") filed an application for supplemental security income ("SSI") benefits on behalf of her minor daughter, De'Erica Bowie ("De'Erica"), on September 20, 2002, alleging a disability onset date of October 10, 1995, due to "kidney problems" (Tr. p. 53). That application was denied by the Social Security Administration ("SSA") (Tr. p. 29).

A de novo hearing was held before an administrative law judge ("ALJ") on August 20, 2003 (Tr. p. 295). The ALJ found that, although De'Erica suffers from "severe" impairments, status post-kidney transplant and a learning disorder, she was not disabled within the meaning of the Social Security Act at any time through the date of his decision on March 12, 2004 (Tr. pp. 14-22). Bowie requested a review of the ALJ's decision, but the Appeals Council declined to review it (Tr. p. 4), and the ALJ's decision became the final decision of the Commissioner of Social Security ("the Commissioner").

Bowie next filed this appeal for judicial review of the

Commissioner's decision. Bowie raises the following issues for review on appeal:

> 1. The ALJ erred in rejecting the finding of the Rapides Parish School Board that the minor child has a learning disorder.
>
> 2. The ALJ erred in failing to address the effects of the anti-rejection medication taken daily by the minor child as a result of her kidney transplant, specifically the anti-rejection drug Neoral and the steroid Prednisone.
>
> 3. The ALJ erred in finding the minor child has less than "marked limitations in the six (6) domains required by 20 C.F.R. § 416.926(a) and (b) in view of the evidence and testimony in the record.
>
> 4. The ALJ erred in failing to address the effect of the diagnosis of Denys-Drash Syndrome on the minor child in his decision.
>
> 5. The ALJ erred in rejecting plaintiff's request to secure additional medical records to substantiate plaintiff's claim regarding Denys-Drash Syndrome.

The Commissioner filed a responsive brief. Bowie's appeal is now before the court for disposition.

## ALJ's Findings

Under the evaluation process for determining whether a child is disabled, the ALJ has to determine (1) whether the child is engaging in substantial gainful activity; (2) if not, whether the child has a severe impairment; and (3) if so, whether the child has an impairment which meets or equals the severity of a listed impairment.[1] See Harris v. Apfel, 209 F.3d 413, 417-418 (5th Cir.

---

[1] In August 1996, the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, Pub.L. No. 104-193, 110 Stat. 2105, 42 U.S.C. § 1382c, changed the standards for defining and determining childhood disability for SSI by eliminating Step 4 of the prior sequential analysis (whether the child's impairment is of comparable severity to an impairment that would disable an adult) and the need for the ALJ to do an

2

2000). If a severe impairment is found, then it must meet the duration requirement to determine if the claimant is disabled. 20 C.F.R. 416.924. If a child's impairments do not meet a listed impairment, a functional limitation assessment is done to determine whether the functional limitations are disabling (functional equivalence for children). 20 C.F.R. § 416.926a.

The ALJ found that De'Erica has never worked, her severe impairments of status post-kidney transplant and a learning disorder did not result in a marked limitation in functioning, she was not functionally equivalent to the severity of the listings, and she was not disabled at any time through the date of his decision on December 27, 2001 (Tr. pp. 24-25).

### Findings and Conclusions

After review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. §405(g), I find that there is substantial evidence in the record as a whole to support the Commissioner's decision of non-disability and the Commissioner's decision comports with all relevant legal standards. Anthony v. Sullivan, 954 F.2d 289, 292 (5th Cir. 1992).

In fulfillment of Fed.R.Civ.P. rule 52, I note that the Commissioner's findings and conclusions[2] put at issue by appellant are supported by substantial evidence, which can be outlined as follows.

---

Individualized Functional Assessment ("IFA").

[2] The relevant findings and conclusions are located in the administrative record at Transcript pages 14-25.

3

## Issue No. 1 - Learning Disorder

First, Bowie contends the ALJ erred in rejecting the finding of the Rapides Parish School Board that the minor child has a learning disorder.

The ALJ did not reject the school board's determination that De'Erica has a learning disorder. The ALJ specifically found that De'Erica suffers from learning disorder impairment.

De'Erica was evaluated by the Rapides Parish School Board for learning disabilities and speech impairment when she was in the first grade, in October 1999 (Tr. p. 132). The School Board concluded that De'Erica had academic weaknesses in reading and articulation, that the deficit in articulation would interfere with the quality and efficiency of De'Erica's participation within the educational setting, and that De'Erica met the criteria for inclusion in speech therapy and qualified for a learning disability and speech impairment in articulation (Tr. p. 146). De'Erica began receiving special assistance in spelling and English (Tr. p. 91). The School Board also noted that, although De'Erica took medication for her kidney transplant, her medical condition did not interfere significantly with her educational performance (Tr. p. 147).

De'Erica underwent a consultative psychological examination in September 2002 with clinical psychologist Rick Adams, who diagnosed a learning disorder and an anxiety disorder which have at least a mild impact on her concentration, persistence, and pace; it was noted that De'Erica comprehends and communicates well (Tr. pp. 200-202). De'Erica was re-evaluated by the Rapides Parish School Board

in October through November 2002, when she was in the fourth grade (Tr. p. 275). Tests revealed De'Erica has average academic skills (Tr. p. 287) and no longer meets the criteria for needing special help in the speech therapy program (Tr. p. 290).

Since the evidence does not indicate that De'Erica has a disabling learning disorder that meets listing-level severity, this ground for relief is meritless.

Ground No. 2 - Medication Side-Effects

Next, Bowie contends the ALJ erred in failing to address the effects of the anti-rejection medications taken daily by De'Erica as a result of her kidney transplant, specifically the anti-rejection drug Neoral[3] and the steroid Prednisone.

De'Erica, who was born in 1993, has Denys-Drash syndrome;[4] she

---

[3] Neoral is a brand name for cyclosporine, which is used to prevent rejection of kidney, liver, and heart transplants. Side effects from cyclosporine are common, and a doctor should be contacted if these symptoms are severe or do not go away: upset stomach, vomiting, diarrhea, loss of appetite, increased hair growth, sinusitis, and breast enlargement. If you experience any of the following symptoms, or those listed in the IMPORTANT WARNING section, call your doctor immediately: tremors, overgrowth of the gums, unusual bleeding or bruising, sore throat, fever, chills, yellowing of the skin or eyes, seizures, decreased urination, swelling (feet, ankles, lower legs, and hands), weight gain, headache, changes in vision, lack of control over body movement, and confusion. MEDLINEplus Health Information, Drug Information: Neoral, *available at* http://www.nlm.nih.gov/medlineplus/druginfo/medmaster (a service of the U.S. National Library of Medicine and the National Institutes of Health).

[4] Denys-Drash syndrome (DDS) is a rare disorder consisting of the triad of congenital nephropathy, Wilms tumor, and intersex disorders resulting from mutations in the Wilms tumor suppressor (*WT1*) gene. Nephropathy is a constant feature; in the incomplete forms of the syndrome, the nephropathy coexists with either Wilms tumor or intersex disorders, but the vast majority of patients

5

had a kidney transplant in 1995 followed by multiple surgeries for resection of a Wilms' tumor[5] on her remaining native kidney (Tr. pp. 149, 150, 152).

De'Erica was evaluated for frequent epigastric pain in January and February 2002; ultrasounds showed bowel gas (likely due to her post-transplant medications, Neoral and Prednisone) (Tr. pp. 179, 185, 192, 194, 198-199). Duodenal, gastric, and esophageal biopsies showed chronic gastritis (Tr. pp. 157, 158, 161). Dr. John J. Herbst, a pediatrician, examined De'Erica in February 2002 and noted her history of painful constipation, for which he prescribed Miralax (Tr. p. 149).

In March 2002, Dr. Franklin G. Boineau, a pediatric nephrologist, examined De'Erica in a follow up to her transplant and noted her abdominal pain was worse after taking her morning dose of Prednisone (Tr. p. 150). Dr. Boineau found De'Erica's renal function was stable and continued her on Neoral (Dr. p. 151).

---

with DDS are destined to develop Wilms tumor in any residual renal tissue. A. Swiatecka-Urban, M.D., "Denys-Drash Syndrome," , available at www.emedicine.com. Also, "Wilms Tumor and Other Childhood Kidney Tumors (PDQ): Treatment," National Cancer Institute, U.S. National Institutes of Health, available at www.cancer.gov. See also Tr. pp. 120-131.

It does not appear that De'Erica suffers from the physical intersexual aspects of the disorder; nothing of that nature is mentioned in the record before the court other than a pediatric clinic progress note indicating that De'Erica's growth and development are normal (Tr. p. 217).

[5] Wilms' tumor is a cancerous tumor of the kidney that occurs in children. MEDLINEplus Health Information, Medical Encyclopedia: Wilms' tumor, *available at* http://www.nlm.nih.gov/medlineplus/encyclopedia.html (a service of the U.S. National Library of Medicine and the National Institutes of Health).

In November 2002, Dr. Boineau stated that De'Erica's only physical restriction was no contact sports which could harm her renal implant (Tr. p. 288).

In June and July 2002, De'Erica suffered from hair loss at her forehead, as well as gastric pain which was probably due to stress (Tr. p. 170). De'Erica was evaluated by Dr. Douglas C. LaGarde, a pediatric gastroenterologist, who stated he believed De'Erica's periumbilical pain was functional in nature and directly related to the stress of losing her SSI benefits and the accompanying lifestyle changes, plus the fact that she was of the age (then 9 years old) to start having the recurrent abdominal pain of childhood, and recommended that she see a psychiatric social worker or a child psychologist (Tr. pp. 152-154).

At her 2003 administrative hearing, De'Erica testified that she was 10 years old and in the fifth grade (Tr. pp. 299-300). De'Erica said she enjoyed swimming and being in the pep squad at school (Tr. pp. 301-302). De'Erica also testified that her medication causes leg cramps and stomachaches, so she has trouble going to sleep (Tr. pp. 303-304). De'Erica testified that she has to take medicine twice a day and does not like it (Tr. pp. 304-306). Bowie testified that De'Erica has had a problem with gingival hypertrophy, which causes her gums to swell (Tr. p. 306); De'Erica's gums were cut back, but regrew a little, causing some problems with De'Erica's speech (Tr. p. 307). Bowie testified that De'Erica suffers from stomachaches and headaches daily, catches a lot of colds, and has missed a lot of school due to her

stomachaches (Tr. pp. 309, 311). Bowie gives De'Erica Maalox and Prilosec every day because, about thirty minutes after she eats, her stomach hurts, she has nausea, and she has burning in her chest (Tr. p. 310). De'Erica takes Tylenol and Motrin for her headaches (Tr. p. 312). Bowie testified that De'Erica is depressed because she had to have a kidney transplant (Tr. p. 309). De'Erica's medications cause her arms and legs to cramp and hurt when she plays with other kids, she tires easily, her Prednisone recently caused hair loss (which grew back), and she suffers from constipation (Tr. pp. 310-312). Bowie testified that De'Erica had received counseling from the school counselor for her stress problems (Tr. p. 316).

The medical expert, Dr. Gaylon M. Bates, a pediatrician (Tr. p. 48), summarized De'Erica's medical history from the medical records[6] (Tr. pp. 319-323) and found De'Erica did not have any symptoms that could be related to poor kidney function (Tr. p. 324). Dr. Bates also testified that De'Erica's recurring problem with swollen gums, caused by her Neoral medication, had the potential to cause problems with gum disease, so her teeth and gums require extra care when they are swollen (Tr. pp. 326-327). Dr. Bates testified that De'Erica's Prednisone medication can cause weight gain and might also affect her stomach, and that taking Tylenol or Motrin on an empty stomach could upset her stomach (Tr.

---

[6] Dr. Bates noted it was not clear from the medical records whether De'Erica had her remaining kidney removed with the Wilms' Tumor resections, although Bowie indicated she believed both of De'Erica's kidneys had been removed (Tr. p. 322).

8

p. 327).

Dr. Bates further testified that De'Erica did not meet or equal any of the Appendix 1 listings (Tr. p. 328). Dr. Bates testified that De'Erica does not meet Listing 12.02(B)(2), organic mental disorders, because she has less than marked impairment in the cognitive and communications functions, only a slight impairment in concentration, persistence and pace (based on Dr. Adams' comment as to her stress level), less than marked impairment in acquiring and using information, less than marked impairment in attending and completing tasks, and no impairments in social, personal, interacting and relating with others, moving about and manipulating objects, or caring for herself, but she "might" have a marked impairment in family health and well being (Tr. pp. 328, 329-330). Dr. Bates also testified De'Erica does not meet the listings for the digestive system impairments because her growth is okay and her upper GI was normal (Tr. p. 328). Dr. Bates testified that he also specifically looked at Listing 12.06 for anxiety disorders, and the listings applicable to renal disorders, and found De'Erica did not meet them (Tr. p. 328). Finally, Dr. Bates testified that, although De'Erica requires some special education classes, has to have her kidney transplant carefully monitored, and takes medications which have side effects, that combination of factors did not render her disabled (Tr. p. 338).

The ALJ specifically mentioned De'Erica's stomach pain when reviewing the testimony and each doctor's medical records in his decision (Tr. pp. 16-18), and concluded that her stomachaches

caused a less than marked limitation in health and physical well-being because her tests and physical exams were negative and it was believed her stomach pain was primarily functional rather than physical (Tr. p. 21). No physician imposed any limitations on De'Erica other than not engaging in contact sports due to her renal transplant. Although De'Erica was found to have gastritis, Dr. LaGarde and Dr. Boineau believed it was caused by a combination of medication side effects, stress, and childhood stomachaches. Bowie has not pointed to any other side effects which the ALJ did not mention, nor has she shown how De'Erica is disabled by the side effects. Therefore, the ALJ did not fail to consider De'Erica's medication side-effects.

Substantial evidence supports the Commissioner's conclusion that De'Erica is not disabled by medication side-effects.

Ground No. 3 - De'Erica's Functional Limitations

Next, Bowie contends the ALJ erred in finding De'Erica has less than marked limitations in the six domains required by 20 C.F.R. § 416.926(a) and (b), in view of the evidence and testimony of record.

If a child's impairments do not meet a listed impairment, a functional limitation assessment is done to determine whether functional limitations are disabling (functional equivalence for children). 20 C.F.R. § 416.926a. Whether a child meets the "listing-level severity" standard is dependent on whether the child has marked limitations in two broad areas of development or functioning or extreme limitation in one of those areas. See 20

C.F.R. § 416.926a (2001); Jefferson v. Barnhart, 356 F.Supp.2d 663, 668-669 (S.D.Tex. 2004).

The ALJ found that De'Erica's severe impairments of status-post kidney transplant and a learning disorder did not result in any marked limitation in functioning, and she was not disabled at any time through the date of his decision on December 27, 2001 (Tr. pp. Tr. pp. 21-22). The medical records support the ALJ's findings and Bowie does not point to any evidence which indicates otherwise. No doctor found De'Erica has a marked limitation except Dr. Bates, who stated she "might" have a marked limitation in the domain of family health and well being (Tr. p. 330). Although the ALJ did not find any marked limitations, even if it is assumed De'Erica has a marked limitation in the domain of family health and well-being, one marked limitation is insufficient to establish listing-level severity. See Section 416.926a(a).

Since De'Erica does not meet listing-level severity, this argument is meritless, as well.

No. 4 - Denys-Drash Syndrome

Bowie also contends the ALJ erred in failing to consider the effects of Denys-Drash Syndrome on De'Erica. Admittedly, the ALJ failed to state specifically that De'Erica has Denys-Drash Syndrome. However, the symptomatology discussed by the physicians and the ALJ are caused by or a result of De'Erica's Denys-Drash Syndrome. If De'Erica had not been born with Denys-Drash Syndrome, she would not have had a kidney transplant or a Wilms' tumor, would not be taking Neoral and Prednisone, and would not have a reason to

apply for SSI. Since consideration of De'Erica's symptoms and limitations is essentially consideration of her Denys-Drash Syndrome, Bowie cannot point to any prejudice arising from the ALJ's failure to state De'Erica has Denys-Drash Syndrome. This argument is meritless.

Additionally, Bowie argues the ALJ failed to consider and develop the record with respect to an intersex disorder. However, De'Erica apparently only has an incomplete form of Denys-Drash Syndrome, involving nephropathy and a Wilms' tumor only, and does not suffer from an intersex disorder (See Doc. Item 13, Ex.); nothing in the medical records indicates that she does. In any event, the burden of proving De'Erica has a medical condition such as an intersex disorder was on Bowie (who was represented by counsel throughout the proceedings), not the Commissioner or the ALJ. See <u>Greenspan v. Shalala</u>, 38 F.3d 232 (5th Cir. 1994); 20 C.F.R. §423(d)(1)(A) and (d)(3); 20 C.F.R. §404.1508; 42 U.S.C. §423(d)(1)(A).

This ground for relief is also meritless.

<u>No. 5 - Additional Medical Records</u>

Finally, Bowie contends the ALJ erred in rejecting her request to secure additional medical records to substantiate her claim regarding Denys-Drash Syndrome. Again, the medical records before the court establish conclusively that De'Erica was born with Denys-Drash Syndrome; her Wilms' tumor and renal failure were both symptoms of the syndrome. There does not appear to have been anything else to establish at this time and Bowie has not specified

anything. If there was, as stated above, the burden of proving a further disability was on Bowie. This claim is meritless.

## Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that the final decision of the Commissioner be AFFIRMED and that Bowie's appeal be DENIED AND DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this ____ day of July, 2005.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE